UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

PAMELA MELVIN,

          Plaintiff,

v.

U.S.A. TODAY, *et al.*,

          Defendant.

Civil Action No. 3:14–CV–00439

## MEMORANDUM OPINION

THIS MATTER is before the Court on: (1) Newspaper Defendants' 12(b)(6) Motion to Dismiss For Failure to State a Claim filed by *USA Today*, *The Washington Post*, *Detroit Free Press*, *Newark Star-Ledger*, *Philadelphia Inquirer* and *Dallas Morning News, Inc.* ("the newspaper defendants"), ECF No. 6; (2) Defendant Sun-Times Media, LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2),[1] ECF No. 15, and Defendant Sun-Times Media, LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 17, filed by Sun-Times Media, LLC, d/b/a Chicago Sun-Times[2] ("Sun-Times"); and (3) Defendant Boston Globe Media Partners, LLC's Motion to Dismiss Complaint filed by *The Boston Globe* ("the Globe"), ECF No. 28. Because it is related to the instant matter, the Court will also address Plaintiff's Motion for Partial Amendment of the Complaint ("Motion to Amend") filed by Plaintiff Pamela Melvin ("Melvin"). ECF No. 34. Sun-

---

[1] Defendant Sun-Times Media, LLC, d/b/a Chicago Sun-Times, filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) concurrently with its Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF Nos. 15-18.

[2] Plaintiff Pamela Melvin ("Melvin") actually named "Chicago Sun-Times" as one of eleven newspaper defendants, which is a d/b/a of Sun-Times Media, LLC, an Illinois limited liability company and publisher of the *Chicago Sun-Times* newspaper.

Times as well as the newspaper defendants together with the Globe[3] oppose Melvin's Motion to Amend.  ECF Nos. 35, 36.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2014, Melvin filed a 173-page, 600-paragraph Complaint against eleven newspapers across the country alleging violations of her constitutional and civil rights under 42 U.S.C. § 1981 and the First Amendment.  *See* Complaint ("Compl.").  She also alleged violations under various articles of the Universal Declaration of Human Rights.  Compl. ¶ 333.  On September 3, 2014, six of the eleven defendants, the newspaper defendants, moved to dismiss Melvin's Complaint.  On September 8, 2014, Sun-Times separately moved to dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.  ECF Nos. 15, 17.  On September 16, 2014, the Globe moved to dismiss the Complaint.  ECF No. 28.

On October 21, 2014, after this Court granted Melvin an extension of time, *see* ECF No. 33, to respond to the aforementioned motions to dismiss, Melvin filed a two-page Motion to Amend, in which she seeks "to amend only the federal statute upon which [Melvin's] action was filed."  Pl.'s Mot. to Amend at 1.  Specifically, she stated as follows:

> moves to amend the statute 42 U.S.C. § 1981 (a) by replacing it with the "Civil Rights Act of 1964."  Plaintiff replaces statute 42 U.S.C. § 1981 (a) with the Civil Rights Act of 1964 on all pages after page 159 and in the First Claim for Relief of the Complaint.

*Id.* at 1-2.  In her Motion to Amend, Melvin "respectfully moves the Court to file a partial Amendment to the Complaint as a matter of course under Rule 15[(a)](1)(B)."  *Id.* at 1.  Thus, she argued that she had a right to amend her Complaint as of the date that she filed her Motion to Amend.  On October 31, 2014, the newspaper defendants, with the Globe joining, filed an opposition to Melvin's Motion to Amend, requesting that this Court deny Melvin's Motion to Amend because the amendment would be futile.  *See* Newspaper Defendants' Opposition to

---

[3] Instead of filing a separate opposition to Plaintiff's Motion for Partial Amendment of the Complaint ("Motion") *The Boston Globe* ("the Globe") joined the opposition filed *USA Today, The Washington Post, Detroit Free Press, Newark Star-Ledger, Philadelphia Inquirer*, and *Dallas Morning News* ("the newspaper defendants") "to avoid unnecessary repetition."  *See* Newspaper Defendants' Opposition to Plaintiff's Motion for Partial Amendment of the Complaint ("Defs.' Opp'n") at 1.

Plaintiff's Motion for Partial Amendment of the Complaint ("Newspaper Defs.' Opp'n") at 2. Likewise, Sun-Times filed its opposition to the Motion to Amend on November 4, 2014, agreeing with the newspaper defendants' argument that the amendment would be futile and requesting that this Court deny the Motion to Amend and enter an Order dismissing with prejudice all of Melvin's claims against Sun-Times.  Defendant Sun-Times Media, LLC's Opposition to Plaintiff's Motion for Partial Amendment of the Complaint ("Sun-Times' Opp'n") at 1, 3-4.

Because this matter is before the Court on the a multitude of motions to dismiss filed by the Globe, Sun-Times, and the newspaper defendants, the following facts are drawn from Melvin's Complaint and are construed in the light most favorable to her.  Melvin alleges violations of her constitutional and civil rights under 42 U.S.C. § 1981, the First Amendment, and various articles of the Universal Declaration of Human Rights[4].  In general, Melvin has been mistreated[5] by a variety of individuals and entities, including the United States Department of Veterans' Affairs ("VA"), various judges, and other government officials.  *See generally* Compl. ¶¶ 1-575.  Her life is "in grave danger" as a result of criminal and racially discriminatory conduct on the part of the VA and the failure of any United States court of official to protect her.  *See e.g.*, *id.* ¶¶1-3.  As a result, she is in "dire need of medical treatment" because she has "suffered devastating harm" from being deprived of treatment.  *Id.* ¶13.  Additionally, Melvin states, without much explanation, that attorneys for the VA have created a "one-way Internet system" at her apartment, through which they control her computers and printers.  *Id.* ¶ 3 n.1.  As a consequence, Melvin blames the government—since they control her computer and printer—for any errors in her Complaint and adds that she "is safe nowhere as there is no injury, harm, atrocity or act of terrorism that the VA attorneys and others cannot inflict upon her."  *Id.*

---

[4] In part, Melvin's Complaint is based on various articles of the Universal Declaration of Human Rights.  *See e.g.*, ¶ 335.  The Court will not address allegations related to violations of the Universal Declaration of Human Rights because they are based on clearly nonbinding law and are thus frivolous.

[5] More specifically, Melvin reports that the eleven defendants have not reported on her many administrative and civil actions against the United States Department of Veterans' Affairs and others for allegedly taking control of her computer, spying on her, leaving feces at her house, abusing the court system, and engaging in other types of harassment.  *See e.g.*, Compl. ¶¶ 332-33.

Melvin's claims are predicated on the eleven defendants' failure to report Melvin's administrative proceedings and civil actions against the federal government. *Id.* ¶¶18-19, 576, 591-92, 594-95, 597, 600. More specifically, the eleven defendants have published articles about other high-profile "civil cases that were filed by white citizens against the Federal Government, its agencies and its officials,"[6] *id.* ¶ 576, but they have not reported on Melvin's civil actions because she is African-American, *id.* ¶¶ 588-594. According to Melvin, "[b]y publishing the court cases filed by white citizens against the federal government and refusing and failing to publish the court cases filed by the Black Plaintiff against the federal government, [the Globe, Sun-Times, and the newspaper defendants] intentionally discriminated against Plaintiff because of her race in violation of 42 U.S.C. § 1981(a)." *Id.* ¶¶ 597, 594-600.

The Complaint seeks a mandatory injunction against all defendants to "publish [] the court cases that Plaintiff filed in the federal courts against the federal government, its officials, and its agencies, as the . . . [defendants] published the court cases that white citizens filed." *Id.* at 172-73. The Complaint also seeks damages in excess of $150,000 against *The Washington Post* and *U.S.A. Today* but not against the other newspaper defendants, the Globe, or Sun-Times.

## II.    LEGAL STANDARD

### A.   *Amending a Complaint*

Rule 15(a)(1) of the Federal Rules of Civil Procedure allows a party to amend its complaint as a matter of course within twenty-one (21) days of serving the complaint, or within 21 days after service of a motion to dismiss. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend its complaint "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Federal Rules instruct courts to "freely give leave when justice so

---

[6] Melvin complains that the defendants have not reported on lawsuits that she has filed (citing docket numbers 1:12-CV-1501 and 5:09-CV-235), but have reported on litigation involving Valerie Plame, Paula Jones, and former Veterans Affairs Secretary Eric Shinseki. Complaint ("Compl.") ¶¶ 598, 594.

4

requires." *Id.* However, "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. V. Niles Bolton Assocs.*, 602 F,3d 597, 603 (4th Cir. 2010).

    B.  *Motion to Dismiss*

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is limited to determining whether the complaint states "plausible claims for relief." *Id.* at 679. A complaint must sufficiently contain factual allegations in addition to legal conclusions. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facts pled that are 'merely consistent with' liability are not sufficient." *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

Thus, to survive a motion to dismiss under Rule 12(b)(6), Melvin's Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Indeed, "Pro se complaints are to be read liberally, but § 1951(d) does not demand that we conclude '[plaintiff] had alleged that he was appealing a criminal conviction returned on the planet Saturn,' before

5

such a complaint would warrant dismissal sua sponte as frivolous."). *White v. White*, 886 F.2d 721, 724 (4th Cir. 1989)(citation omitted).

## III. DISCUSSION

### A. Parties' Arguments

#### a. The Globe

The sole relief that Melvin seeks against the Globe is as follows:

> [A]n injunctive order requiring all eleven Newspaper Defendants to provide Plaintiff the full and equal benefit of the law, the First Amendment right of freedom of the Press, for the security of Plaintiff's person and property by publishing the court cases that Plaintiff filed in the federal courts against the federal government, its officials, and its agencies, as the Newspapers Defendants published the court cases that white citizens filed in the federal courts against the federal government, its officials, and its agencies . . .

Compl. ¶ 5. The Globe argues: (1) the injunctive relief that Melvin seeks would violate the First Amendment and (2) Melvin's Complaint fails to state a claim under 42 U.S.C. § 1981. Defendant Boston Globe Media Partners, LLC's Memorandum of law in Support of Motion to Dismiss Complaint ("Globe's Mem.") at 3-4.

First, concerning the former bases, the Globe argues that the conduct alleged by Melvin lies at the heart of editorial discretion protected by the First Amendment, which leaves to private citizens, not the government or litigants, the power to decide whether to speak on any particular subject. *Id.* at 4. The Globe cites to *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241 (1974) to support its argument. In *Miami Herald*, the United States Supreme Court considered whether a statute requiring newspapers to grant candidates a right to equal space to reply to criticism and attacks on their records violated the guarantees of a free press. *Id.* at 241. The court in *Miami Herald* struck down the Florida right-to-reply statute as an unconstitutional intrusion upon the editorial function of newspaper, even though the statute, by requiring that a candidate for election to office have access to a monopoly news outlet to reply to charges against him, was designed to ensure a more fully informed electorate. *Id.* at 245, 258. The Globe cites to the

court's reasoning that the exercise of editorial judgment is a protected First Amendment activity:

> A newspaper is more than a passive receptacle or conduit for news, comment, and advertising. The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and the treatment of public issues and public officials – whether fair or unfair – constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press as they have evolved to this time.

Globe's Mem. at 3 (quoting *Miami Herald*, 418 U.S. at 248). The Globe argues that the Fourth Circuit has applied the court's reasoning in *Miami Herald* to reach the conclusion that a plaintiff cannot compel a newspaper to provide "equal access" to those "disagreeing with its editorial positions" without running afoul of the constitutional guarantee of the freedom of the press." *Id.* at 4 (quoting *Kania v. Fordham*, 702 F.2d 475, 477 n.5 (4th Cir. 1983)). Therefore, the Globe argues, these constitutional principles are fatal to Melvin's claims against it.

Second, the Globe argues that because Melvin's Complaint fails to allege that any past, present, or future contractual relationship (or any relationship of any kind) was allegedly impaired by the Globe, her Complaint fails to state a claim under § 1981 and should be dismissed accordingly. *Id.* at 5.

b. Sun-Times

In her 173-page Complaint, Melvin's only allegation specific to Sun-Times is that "[t]he Chicago Sun-Times is an American daily newspaper published and headquartered in Chicago, Illinois." Compl. ¶ 26. Sun-Times moves the Court to dismiss the Complaint pursuant to Rule 12(b)(2) and 12(b)(6).

Regarding the 12(b)(2) bases, Sun-Times argues that there is no basis for this Court to exercise personal jurisdiction over Sun-Times, let alone award any relief to Melvin in law or equity. *See* Sun-Times' Memorandum of Law in Support of Defendant Sun-Times media, LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2)

("Sun-Times 12(b)(2) Mem.") at 2. Sun-Times states two arguments in support of its 12(b)(2) motions, namely that: (1) it has insufficient minimum contacts with Virginia and (2) exercising jurisdiction over Sun-Times in Virginia fails to comport with the Due Process Clause of the Fourteenth Amendment—*i.e.,* that the maintenance of suit in the forum would not comport with traditional notions of fair play and substantial justice. *Id.* (citing *Young v. New Haven Advocate*, 315 F.3d 256, 264 (4th Cir. 2002)). Sun-Times argues that: (1) Melvin is not a resident of Virginia; (2) Sun-Times does not have officers, employees, offices, equipment, telephone numbers, or property located within the Commonwealth of Virginia; and (3) Sun-Times does not intentionally target Virginia residents. See *id.* at 2 (citing Ex. 1 "Ebach Decl." ¶ 5).

Reportedly, Sun-Times argues, the Complaint cites no facts to support either specific or general jurisdiction over the Sun-Times. *Id.* at 4. Rather, the Complaint contains allegations to the contrary. For example, Sun-Times argues, the Complaint alleges that Melvin is "a North Carolina resident, *see* Compl. ¶ 22, and that the Sun-Times is published and headquartered in Chicago, Illinois, *id.* ¶ 26." *Id.* (internal quotations omitted). Furthermore, Sun-Times contends that "[t]here are no allegations that the Sun-Times regularly transacts or solicits business in Virginia contracts to supply services or goods in Virginia, owns real property in Virginia, maintains Virginia offices, or has engaged in continuous or systematic activities in Virginia. Va. Code § 8.01-328.1." *Id.* Further supporting that this Court has not personal jurisdiction over Sun-Times, Sun-Times reports that the Complaint does not allege that it delivers copies of its newspaper to Virginia. *Id.* In fact, Sun-Times argues, the newspaper is focused almost exclusively on serving its local audience in Illinois, not residents of Virginia. *Id.* (citing Ex. 1 "Ebach Decl." ¶ 6). Sun-Times argues that Melvin's claims do not stem from any activity that Sun-Times directed at this forum. To the contrary, Sun-Times argues, Melvin's "claims appear predicated upon the Sun-Times's **lack** of interest in Plaintiff's activity within the forum." *Id.* at 5 (emphasis in original); *see also id.* Ex. 1 "Ebach Decl." ¶ 7. Moreover, Sun-Times underscores

that Melvin, who does not reside in Virginia, cannot allege that Sun-Times had prior dealings with her.[7] *Id.* (citing Compl. ¶ 22). Accordingly, Sun-Times argues, Melvin cannot satisfy the requirement that Sun-Times have sufficient minimum contacts with the forum for the exercise of jurisdiction over it to satisfy constitutional due process.

Concerning the 12(b)(6) ground, Sun-Times argues: (1) Melvin's Complaint lacks sufficient factual matter with respect to Sun-Times; (2) Sun-Times is entitled, as a matter of law, to unfettered editorial control of the content of its newspaper; and (3) Melvin does not possess a statutory, common law, or Constitutional right of access to the pages of its newspaper. *See* Sun-Times' Memorandum of Law in Support of Defendant Sun-Times media, LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Sun-Times 12(b)(6) Mem.") at 3 (citing *Miami Herald*, 418 U.S. at 258 (holding that the First Amendment's guarantee of a free press mandates exercise of editorial judgment by newspapers and bars government from requiring newspaper to print material)).

First, Sun-Times argues that the Complaint fails to allege specific conduct—unlawful or otherwise—by Sun-Times. Sun-Times 12(b)(6) Mem. at 3. Sun-Times argues that Melvin is required to plead "factual content that allows the court to draw the reasonable inference that [Sun-Times] is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 560 (pleading antitrust conspiracy requires "more than merely parallel behavior")). Sun-Times contends that, although Melvin filed a 173-page pleading, she omitted virtually any operative allegations specific to Sun-Times and, instead, merely grouped it with ten other defendants. To the contrary, Sun Time argues submits that Melvin actually absolves all defendants of liability by

---

[7] In its moving papers, Sun-Times states, "The Complaint alleges that Plaintiff mailed documents regarding her civil cases to two other defendants, but not Sun-Times. Compl. ¶¶ 588–89. In any case, Sun-Times has no Virginia mailing address, and the Court can take judicial notice that Sun-Times has no office in Virginia." Sun-Times' Memorandum of Law in Support of Defendant Sun-Times media, LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Sun-Times Mem.") at 5 (citing Ex.1 "Ebach Decl." ¶ 5; *Business Entity Search*, Commonwealth of Virginia, State Corporation Commission, https://sccefile.scc.virginia.gov/Find/Business (last visited Sept. 2, 2014).

claiming that "the VA and federal attorneys" actually are at fault because they "prohibited the Newspaper Defendants from publishing her civil court cases." *Id.* (citing Compl. ¶577).

Second, Sun-Times argues that the First Amendment of the United States Constitution does not allow Melvin to commandeer Sun-Times' editorial decision-making and compel it to write about her specific lawsuits. Because it is established law that "[t]he choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials — whether fair or unfair — constitute the exercise of editorial control and judgment," *Miami Herald*, 418 U.S. at 258, Sun-Times argues that the First Amendment guarantees Sun-Times the "absolute discretion to determine the contents of [its] newspaper[]." *Id.* at 4 (quoting *Passaic Daily News v. NLRB*, 736 F.2d 1543, 1557 (D.C. Cir. 1984) (finding that the order "impermissibly attempts to compel the [newspaper] to publish what it would prefer to withhold in violation of the First Amendment"). Accordingly, as a matter of constitutional law, Sun-Times argues that it cannot be penalized for not publishing Melvin's lawsuits. *Id.* at 4. The crux of Sun-Times' argument is that "[c]overing some lawsuits against the government does not require the Sun-Times to cover all similar lawsuits against the government because '[a] newspaper is more than a passive receptacle or conduit for news, comment, and advertising.'" *Id.* at 4-5 (quoting *Miami Herald*, 418 U.S. at 258). Sun-Times further argues that the First Amendment's protection would extend to Sun-Times even if, as Melvin suggests without any factual support, certain of the defendants decided (or were compelled by the VA) not to report her lawsuits because of her race. *Id.* at 5 (citing *Snyder v. Phelps*, 131 S. Ct. 1207, 1216 (2011) (holding that hateful signs held by Westboro Baptist Church picketers at military funerals were entitled to First Amendment protection); *Ampersand Publ'g, LLC v. NLRB*, 702 F.3d 51, 56 (D.C. Cir. 2012) (finding that where enforcement of the National Labor Relations Act would interfere with a newspaper's editorial discretion, "the statute must yield").

Likewise, Sun-Times argues that 42 U.S.C. § 1981 does not provide Melvin any right to compel it to report her lawsuits. *See id.* at 6. (citing *Groswirt v. Columbus Dispatch*, 238 F.3d 421 (6th Cir. 2000) (unpublished) (affirming dismissal of § 1981 claim and concluding that "[b]ecause the Dispatch cannot be compelled by a federal court to publish the plaintiffs' letters and cannot be ordered to pay damages to the plaintiffs for the failure to publish their letters, the plaintiffs' complaint fails to state a claim for relief"); *Johari v. Ohio State Lantern*, 76 F.3d 379 (6th Cir. 1996) (unpublished) (affirming dismissal of § 1981 claim because "the First Amendment does not require a private publication to publish any information by an outsider"); *cf. Cook v. Advertiser Co.*, 458 F.2d 1119, 1122 (5th Cir. 1972) (affirming lower court's dismissal of § 1981 claim based on First Amendment grounds, which outweighed African-American plaintiff's purported rights under § 1981, because plaintiff had no protected right of contract to have wedding announcement published in the newspaper). Finally, Sun-Times argues, Melvin's "oblique references to 'equal protection' are misplaced because the Sun-Times is not, and is not alleged to be, a state actor." *Id.* at 6. Thus, under long-established First Amendment jurisprudence protecting the free press, Sun-Times argues that Melvin cannot state a claim in law or equity against Sun-Times with respect to its editorial decisions — or lack thereof — concerning Melvin's litigation against the government. *Id.* at 7.

c. <u>The Newspaper Defendants</u>

According to the newspaper defendants, Melvin's Complaint does not plausibly plead facts showing that: (1) any of the newspaper defendants engaged in intentional, purposeful race discrimination or (2) that that their conduct interfered with a legitimate contract right. Memorandum in Support of Newspaper Defendants' 12(b)(6) Motion to Dismiss For Failure to State a Claim ("Newspaper Defs.' Mem.") at 2-3. Upon aligning their arguments with those presented by the Globe and Sun-Times, the newspaper defendants conclude that "in light of the [newspaper defendants'] First Amendment free speech right, it is clear that neither white

11

citizens nor non-white citizens have a contractual right to have material published by a newspaper." *Id.* at 6 (quoting *Groswirt*, 238 F.3d at 422) (citation omitted).

### B. Analysis

Before turning to the merits of defendants' motions to dismiss, the Court must first consider Melvin's Motion to Amend.

#### a. Melvin's Amended Complaint

Melvin's Motion to Amend could be read to imply or argue that Melvin had a right to amend her Complaint as of the date that she filed her Motion to Amend. *See* Pl.'s Mot. to Amend at 1 (saying in two places that she "respectfully moves the Court to file a partial Amendment to the Complaint *as a matter of course under Rule 15[(a)](1)(B)*) (emphasis added). Melvin filed her Motion to Amend on October 21, 2014, which was over four months after serving her original complaint and more than 21 days after (1) September 3, 2014, the date that the newspaper defendants moved to dismiss Melvin's Complaint; (2) September 8, 2014, the date that Sun-Times moved to dismiss Melvin's Complaint; and (3) September 16, 2014, the date that the Globe moved to dismiss Melvin's Complaint. Melvin did not seek leave of court to amend her Complaint. She, likewise, has not gained defendants' consent to her proposed amendment. Thus, she has not complied with Rule 15(a)(2).

Accordingly, Melvin's Motion to Amend will be DENIED. ECF No. 34.

#### b. Motions to Dismiss

Because of the following analysis concerning the movants' 12(b)(6) motions to dismiss, Sun-Times' motion to dismiss pursuant to 12(b)(2) is moot.

Concerning the remaining motions to dismiss, even accepting as true all the factual allegations contained in Melvin's Complaint, as the Court must, and affording the "liberal construction" due to allegations in *pro se* complaints raising civil rights issues, *Brown v. N.C. Dept. of Corr.*, 612 F.3d 720, 722 (4th Cir. 2010), Melvin's Complaint must be dismissed as a

matter of law for failure to state a claim upon which relief may be granted against the Globe, Sun-Times, and the newspaper defendants.

      i. 42 U.S.C. § 1981

The United States Court of Appeals for the Fourth Circuit has held that "[s]ection 1981 guarantees all persons in the United States 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Hawthorne v. Virginia State Univ.*, No. 13-2237, 2014 WL 1613903, *1 (4th Cir. 2014) (per curiam) (citations omitted). "Section 1981 'can be violated only by purposeful discrimination,' and 'must be founded on purposeful, racially discriminatory actions.'" *Id.* (citations omitted). By its terms, § 1981 protects the equal right of "[a]ll persons within the jurisdiction of the United States" to "make and enforce contracts" without respect to race. 42 U.S.C. §1981(a). The statute defines "make and enforce contracts" to "includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).

Therefore, "[t]o succeed on a claim under . . . § 1981 . . . [Melvin] must ultimately establish both that the [the Globe, Sun-Times, and the newspaper defendants] . . . intended to discriminate . . . and that the discrimination interfered with a contractual interest or legitimate property right." *Sewraz v. First Liberty Ins. Corp.*, Civil Action No. 3:10-cv-120, 2012 WL 12438, *6 (E.D. Va. Jan. 3, 2013) (Spencer, J.) (quoting *Hill v. John Foster Homes, Inc.*, No. 3:10–CV–209, 2010 WL 2696655, at *3 (E.D.Va. July 7, 2010)) (citations omitted). Indeed, "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" *Id.* (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479-80 (2006)).

Melvin's § 1981 claim fails on both prongs with respect to the Globe, Sun-Times, and the newspaper defendants. First, Melvin pleads no facts showing that the Globe, Sun-Times, and the newspaper defendants engaged in "purposeful discrimination" that was "intended to discriminate." Her attempt to satisfy this burden by alleging that the eleven defendants

published articles about cases filed by "white citizens" while "not publish[ing] a court case that was filed by the Black Plaintiff" falls far short because she fails to allege facts showing that any of their editorial decisions were motivated by "purposeful discrimination."[8] Here, Melvin fails to allege facts that "produce an inference of liability strong enough to nudge [her] claims 'across the line from conceivable to plausible.'" *McCoy v. Teklu*, Civil Action No. 3:11-cv-650, 2013 WL 3873662, *5 (E.D. Va. July 24, 2013) (Spencer, J.). Second, Melvin fails to allege facts showing that the Globe, Sun-Times, or the newspaper defendants deprived her of any legitimate contract or property right. Any claim brought under § 1981 must identify an impaired "contractual relationship" under which the plaintiff has rights. *Domino's Pizza, Inc.*, 546 U.S. at 476; *see also Runyon v. McCrary*, 427 US 160, 168-69 (1976) ("It is now well established that § 1 of the Civil Rights Act of 1866, 14 Stat. 27, 42 U. S. C. § 1981, prohibits racial discrimination in the making and enforcement of private contracts."). Instead, Melvin merely alleges that she has a right to have her civil actions published by the Globe, Sun-Times, and the newspaper defendants. *See* Compl. at 164, Section XX ("The First Amendment And 42 U.S.C. § 1981 Provide Plaintiff The Right To Have Her Court Cases Published"). Melvin is incorrect because her Complaint does not allege that any past, present, or future contractual relationship (or relationship of any kind) was impaired by the Globe, Sun-Times, or the newspaper defendants. Thus, in addition to failing to allege any facts showing intentional racial discrimination, Melvin does not have a "right" to have the newspapers cover her civil actions. Without any such right, she has not alleged any facts showing the existence of a contract with the Globe, Sun-Times, or the newspaper defendants, which is fatal to her § 1981 claim. *See, e.g., Hill v. John Foster Homes, Inc.*, Civil Action 3:10-cv-209, 2010 WL 2696655, *4 (E.D. Va. July 7, 2010) (Spencer, J.) (granting motion to dismiss § 1981 claim because plaintiff "has not shown that he was deprived of any legitimate contract or property right").

---

[8] To be clear, Melvin only alleges that the Globe's, Sun-Times', and the newspaper defendants' decision not to report on *her* lawsuits is unlawful under § 1981—not that they have failed to report on *any* lawsuits involving African-American plaintiffs against the federal government.

ii.     First Amendment Jurisprudence

The United States Supreme Court has stated, "For better or worse, editing is what editors are for; and editing is selection and choice of material." *Columbia Broad. System, Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 124 (1973). "A newspaper is more than a passive receptacle or conduit for news, comment, and advertising." *Miami Herald*, 418 U.S. at 258. Though not directly articulated by the Fourth Circuit, many courts have declined to compel privately owned newspapers to publish certain information or cover certain events at the request of a private individual. *See e.g.*, *Novotny v. Tripp County*, S.D., 664 F.3d 1173, 1177 (8th Cir. 2011) ("an individual does not possess a constitutional right to require that a privately owned newspaper publish his letter to the editor. Indeed, a contrary rule would infringe upon the right of the newspaper itself to decide what content it includes on its own editorial page"); *Cousino v. Nowicki*, 165 F.3d 26, 1998 WL 708700, *2 (6th Cir. Oct. 2, 1998) ("the First Amendment does not require a private publication or newspaper to publish any information submitted to it") (citations omitted); *Newman v. Associated Press, Inc.*, 112 F.3d 504, 1996 WL 591307, *1 (2d Cir. Oct. 15, 1996) (affirming dismissal of complaint for failure to state a claim because plaintiff "does not have a constitutional guarantee that the defendant must listen to or publish her speech"). Furthermore, a plaintiff cannot compel a newspaper to provide "equal access" to those "disagreeing with its editorial positions" without running afoul of the constitutional guarantee of the freedom of the press." *Kania v. Fordham*, 702 F.2d 475, 477 n.5 (4th Cir. 1983). Examining the Complaint, accepting the facts alleged in Melvin's Complaint as true for the purposes of Rule 12(b)(6), the Globe, for example, failed to report on lawsuits Melvin filed against the VA for injuries she has suffered and elected to report on claims brought by white women such as Valerie Plame and Paula Jones and on litigation against former-Secretary Shineski. Compl. ¶¶ 598, 594; *see also* 590-592 (asserting the same conduct by the remaining defendants). Nevertheless, the conduct alleged by Melvin lies at the heart of editorial discretion protected by the First Amendment, which leaves to private citizens, not the government or litigants, the

power to decide whether to speak on any particular subject.  Therefore, under long-established First Amendment jurisprudence protecting the free press, Melvin cannot state a claim in law or equity against the Globe, Sun-Times, or the newspaper defendants with respect to its editorial decisions—or lack thereof—concerning Melvin's litigation against the government.

## IV.     CONCLUSION

For the aforementioned reasons, the Court will:

    (1)  DENY Plaintiff's Motion for Partial Amendment of the Complaint, ECF No. 34.

    (2)  GRANT Newspaper Defendants' 12(b)(6) Motion to Dismiss For Failure to State a Claim, ECF No. 6;

    (3)  DENY AS MOOT Defendant Sun-Times Media, LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2), ECF No. 15,

    (4)  GRANT Defendant Sun-Times Media, LLC's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 17,

    (5)  GRANT Defendant Boston Globe Media Partners, LLC's Motion to Dismiss, ECF No. 28.

The Court further ORDERS that the Complaint be DISMISSED WITH PREJUDICE against the Globe, Sun-Times, and the newspaper defendants.

Let the Clerk send a copy of this Order to all counsel of record and to Plaintiff.

It is SO ORDERED.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this   20th    day of January 2015.